UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID B. WATKINS,

     Plaintiff,

v.                                Case No.:  8:22-cv-794-VMC-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## **REPORT AND RECOMMENDATION**

     Plaintiff David B. Watkins filed a Complaint on April 4, 2022.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying his claim for a period of disability and
disability insurance benefits.  The Commissioner filed the transcript of the
administrative proceedings (hereinafter referred to as "Tr." followed by the
appropriate page number), and the parties filed separate memoranda detailing their
respective positions.  (Docs. 18, 22, 26).  For the reasons set forth herein, the
Undersigned recommends that the decision of the Commissioner be **AFFIRMED**
pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     **Social Security Act Eligibility**

     The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff filed an application for disability insurance benefits on October 19, 2012, alleging a disability onset date of March 24, 2012.  (Tr. at 230, 362-63).[1]  The claim was denied initially on January 11, 2013, and upon reconsideration on February 20, 2013.  (*Id.* at 230).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ R. Dirk Selland held that hearing on June 25, 2014.  (*Id.* at 251-77).  ALJ Selland issued an unfavorable decision on August 28, 2014.  (*Id.* at 227-44).  On April 6, 2016, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-7).  Plaintiff then filed a complaint in this United States District Court on June 7, 2016.  (*See id.* at 1016). This Court reversed

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations, however, do not apply in Plaintiff's case because Plaintiff filed his claim before March 27, 2017.

and remanded the decision of the Commissioner for further administrative proceedings.  (*Id.* at 1016-27).

On January 25, 2019, the Appeals Council remanded the claim for a new hearing and decision.  (*Id.* at 1034-39).  ALJ Elving Torres held that hearing on September 11, 2019.  (*Id.* at 943-85).  ALJ Torres issued an unfavorable decision on January 30, 2020.  (*Id*. at 918-41).  On April 6, 2016, the Appeals Council declined to assume jurisdiction and denied Plaintiff's request for review.  (*Id.* at 893-99). Plaintiff then filed his Complaint with this Court on April 4, 2022.  (Doc. 1). Plaintiff filed his memorandum in opposition to the Commissioner's decision on August 1, 2022, (Doc. 18), the Commissioner filed a response on October 31, 2022, (Doc. 22), and Plaintiff filed a reply on November 2, 2022, (Doc. 26).  The matter is, therefore, ripe for the Court's review.

III.    **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232,

1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 24, 2012, the alleged onset date, through December 31, 2017, the date in which Plaintiff last met the insured status requirements.  (Tr. at 924).  At step two, the ALJ determined that Plaintiff had the following severe impairments from March 24, 2012 to July 31, 2017:  "moderate generalized anxiety disorder, major depression, and long history of alcohol dependence."  (*Id.*).  From August 1, 2017 through the date last insured, the ALJ found Plaintiff had the following severe impairments:  "cervical spine degenerative changes with space narrowing and stenosis (20 [C.F.R. §] 404.1520(c))."  (*Id.*).

At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525[,] and 404.1526)."  (*Id.* at 20).

At step four, the ALJ found that Plaintiff, from the period of March 24, 2012 through July 31, 2017, had the residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels, but with the following non-exertional limitations:  was limited to work that is simple as defined in the Dictionary of Occupational Titles (DOT) as specific vocational preparation (SVP) levels 1 and 2, routine and repetitive tasks in a work environment free of fast-paced production requirements which is defined as constant activity with

> work tasks performed sequentially in rapid succession;
> involving only simple work-related decisions; with few, if
> any workplace changes; and no more than occasional
> interaction with the general public, co-workers and
> supervisors.

(*Id.* at 927).  From the period of August 1, 2017 through December 31, 2017, the

ALJ found that Plaintiff had the RFC:

> [T]o perform medium work as defined in 20 [C.F.R. §]
> 404.1567(c), except he was unable to climb long vertical
> ladders, scaffolds or ropes, or at open unprotected heights;
> he had to avoid extreme heat temperatures and operation of
> dangerous machinery; and was unable to work where
> alcoholic beverages were available.  He was further limited
> to understanding and carrying out simple, routine,
> repetitive unskilled tasks, with the inability to make basic
> decisions and adjust to simple changes in the work setting,
> and limited to only occasional interaction with others,
> including the general public, coworkers, and supervisors.

(*Id.*).  The ALJ also determined that, for all relevant time periods, Plaintiff "was

unable to perform any past relevant work (20 [C.F.R. §] 404.1565)."  (*Id.* at 932).

At step five, considering Plaintiff's age, education, work experience, and RFC,

the ALJ determined that "there were jobs that existed in significant numbers in the

national economy that the claimant could have performed (20 [C.F.R. §§] 404.1569

and 404.1569(a))."  (*Id.* at 933).  Specifically, the ALJ, relying on Vocational Expert

("VE") testimony, found that Plaintiff, for the period of March 24, 2012 through July

31, 2017, "was able to perform the requirements of representative occupations" such

as automobile detailers (DOT # 915.687-034); horticultural worker (DOT # 401.687-

010); and warehouse worker (DOT # 922.687-058).  (*Id.* at 934).  For the period of

August 1, 2017 through December 31, 2017, the ALJ, again relying on VE

testimony, found that Plaintiff "would have been able to perform the requirements of representative occupations of medium level exertion, and unskilled with an SVP of two," such as hand packager (DOT #920.587-018); warehouse worker (DOT #922.687-058); and cook's helper (DOT #317.687-010).  (*Id.*).  For these reasons, the ALJ held that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from March 24, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 [C.F.R. §] 404.1520(g))." (*Id.* at 935).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates

against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.     Analysis

On appeal, Plaintiff raises three issues. As stated by Plaintiff, the issues are:

1.     Whether the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Plaintiff's RFC based on the medical evidence;

2.     Whether the ALJ failed to properly evaluate Plaintiff's testimony; and

3.     Whether the ALJ relied on a flawed hypothetical to the VE.

(Doc. 18 at 30, 41, 48). The Undersigned will address the issues in the order presented by the briefing.

### A.     Whether the ALJ Failed to Properly Weigh the Medical Opinion Evidence and Failed to Properly Determine Plaintiff's RFC Based on the Medical Evidence.

Plaintiff first argues that the ALJ erred by improperly weighing the medical opinions of Dr. Carroll and Dr. Cohen. (Doc. 18 at 31-32). Plaintiff contends that both doctors "based their opinions on appropriate medical findings." (*Id.* at 32). Plaintiff also asserts that the ALJ erred by discounting the opinions of Dr. Cohen because the opinions "were retrospective but based on a single examination of"

Plaintiff.  (*Id.* at 36).  Plaintiff argues that Dr. Carroll's opinions should have been given controlling weight as a treating physician.  (*Id.* at 37-38).  Even if not given controlling weight, Plaintiff maintains that the ALJ should have given Dr. Carroll's opinions deference under SSR 96-2p.  (*Id.* at 38-39).  Plaintiff specifically faults the ALJ for discrediting the opinions of Dr. Carroll and Dr. Cohen and then formulating his mental RFC determination without the benefit of those medical opinions.  (*Id.* at 39-40).

In response, the Commissioner first argues that "two of the narrative statements by Dr. Carroll only summarize Plaintiff's subjective reports or treatment history, as well as indicate that Plaintiff is unable to work."  (Doc. 22 at 5-6 (citing Tr. at 535, 1175)).  The Commissioner contends that these statements are not medical opinions.  (*Id.* at 6).  Even given that, the Commissioner asserts that the ALJ properly discounted Dr. Carroll's opinions because the opinions were unsupported by Dr. Carroll's own treatment records, (*id.* at 7 (citing Tr. at 930-31), the medical findings at the VA, (*id.* at 8 (citations omitted)), or the findings of Dr. Cohen, (*id.* (citing Tr. at 931)).  The Commissioner also argues that Dr. Carroll focused on Plaintiff's self-reporting rather than objective findings, and that "[a] claimant's subjective complaints are not an acceptable basis for an opinion."  (*Id.* at 8 (citation omitted)).  As to Dr. Cohen, the Commissioner contends that the ALJ provided an adequate basis for giving his opinions partial weight.  (*Id.* at 10-11).

In his reply brief, Plaintiff responds to two of the Commissioner's arguments. (Doc. 26).  As to the contention that the ALJ properly disregarded the opinions of

Dr. Carroll based on some normal mental status findings, Plaintiff argues that "mental status examinations are always going to show at least some normal findings unless the claimant is floridly psychotic." (*Id.* at 1). For that reason, Plaintiff maintains that the ALJ must rely on experts (i.e., medical doctors' opinions) to reach his conclusions. (*Id.* at 2-3). In other words, Plaintiff claims the ALJ erred because "[t]here is no medical authority in the present record that justifies the selective 'normal' findings relied on by the ALJ as being more relevant than the abnormalities relied on by the treating and examining specialists." (*Id.* at 3). Plaintiff then turns to the Commissioner's argument that the ALJ properly determined Plaintiff's mental RFC. (*Id.* at 4). Plaintiff reiterated his argument from his opening brief that the ALJ "impermissibly substituted his own lay judgment of the mental status exam findings." (*Id.*).

The relevant Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis, and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527, 416.927(a)(2). When evaluating a medical opinion, the ALJ considers various factors, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v.*

*Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ must consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons for them. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Eleventh Circuit has further held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F.

App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

When a treating source provides an opinion on an issue reserved to the Commissioner, however, the ALJ need not give the opinion any special significance. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d).  Even so, the opinion may not be ignored.  *See* SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.").  Instead, the ALJ must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."  *Id.*  In so doing, the ALJ must apply the applicable factors found in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  *See* SSR 96-5p, 1996 WL 374183, at *3.

Here, the ALJ gave "little weight" to the opinions of Dr. Carroll "because they are unsupported and inconsistent with the overall medical evidence of record, including her own treatment notes."  (Tr. at 930).  The Undersigned finds no error with that conclusion.  First, the ALJ pointed out that "contrary to [Dr. Carroll's] assessments in her medical source statements/opinions, she noted in her treatment notes that the claimant had no suicidal ideations, had an appropriate appearance and cooperative behavior, had clear and coherent speech, and had fair insight and judgment."  (*Id.* at 930-31; *see also id.* at 813-19, 824-34, 1184, 1186, 1888).  These findings are inconsistent with an assessment that Plaintiff has disabling mental limitations.  Second, the ALJ noted that Dr. Carroll's opinions "appeared to be based o[n] the claimant's subjective self-reports and not based on her own

observations from the encounters." (*Id.* at 931).  The ALJ found that Plaintiff's

subjective reports were noncredible.  (*Id.* at 930).  When an ALJ does not give great

weight to subjective complaints, the ALJ may properly give little weight to medical

opinions that base themselves largely on such subjective reports.  *Crawford v. Comm'r*

*of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Lacina v. Comm'r, Soc. Sec.*

*Admin.*, 606 F. App'x 520, 528 (11th Cir. 2015); *Majkut v. Comm'r of Soc. Sec.*, 394 F.

App'x 660, 664 (11th Cir. 2010).  The Undersigned therefore finds no error with the

ALJs decision to give little weight to Dr. Carroll's opinions.  *See D'Andrea v. Comm'r*

*of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (rejecting argument that

"ALJ erred in failing to accord appropriate weight to the opinion of her treating

physician . . . because the ALJ articulated at least one specific reason for disregarding

the opinion and the record supports it").

The ALJ gave "partial weight" to the opinion of Dr. Cohen.  (Tr. at 931).  The

Undersigned also finds no error with that decision.  The ALJ found Dr. Cohen's

medical source statement to be inconsistent with his own mental status exam

findings.  (*Id.*).  For instance, other than finding Plaintiff "had a depressed mood and

affect marked by tearfulness, the rest of [Plaintiff's] evaluation was essentially

normal."  (*Id.* (citing *id.* at 844-48)).  The ALJ also noted that, "[c]ontrary to his

assessments in exhibit 19F/2, Dr. Cohen's one-time evaluation did not reveal

objective findings supporting sings of suicidal ideations, difficulty thinking or

concentrating, generalized or persistent anxiety, anhedonia, appetite disturbances,

decreased energy, psychomotor retardation, social withdrawal, or insomnia."  (*Id.*

(citing *id.* at 840)).  Similarly, the ALJ found that Dr. Cohen's opinion that Plaintiff had "bouts of depression that last for several weeks," (*id.* at 841), is unsupported because Dr. Cohen only met with Plaintiff once.  (*Id.* at 931).  Finally, like with Dr. Carroll's opinions, the ALJ discussed how Dr. Cohen's opinions were inconsistent with the records from the VA clinic, including those records that showed Plaintiff had "full alertness and orientation, appropriate grooming and good eye contact, . . . calm mood with full and congruent affect, no signs of suicidal/homicidal ideations or evidence of hallucinations, intact cognition with fair-to-good insight and judgment, and adequate concentration, grossly intact memory, and normal fund of knowledge."  (*Id.* (citations omitted)).

To the extent the ALJ based his decision on the fact that Dr. Cohen relied on Plaintiff's subjective complaints, for the same reason discussed with Dr. Carroll, the ALJ properly gave less weight to Dr. Cohen's opinion.  *Crawford*, 363 F.3d 1159-60; *Lacina*, 606 F. App'x at 528; *Majkut*, 394 F. App'x at 664.  Substantial evidence also supports the finding that Dr. Cohen's opinion was inconsistent with the findings from the VA clinic.  *See Phillips*, 357 F.3d at 1241 (finding ALJ's decision to give little weight to treating physician's opinion supported by substantial evidence when "the ALJ articulated several reasons for giving less weight to the treating physician's opinion").  It is not the role of this Court to second guess the decision of the ALJ to give a particular opinion certain weight when the ALJ "articulates a specific justification for it."  *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir.

2015).  The Undersigned finds that the ALJ has done that here and, as a result, finds

no error with the ALJ's decision.

Plaintiff also argues that the ALJ failed to properly apply the factors of 20

C.F.R. § 404.1527(c)(2)-(6) as directed by SSR 96-2p.  (Doc. 18 at 38).  The

Undersigned is not persuaded.  First, there is no requirement that an ALJ discuss

every factor.  *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 751 (11th Cir.

2018) ("[T]he regulations do not require the ALJ to explicitly address each factor.")

(citing *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011)).

Second, the ALJ considered all the opinion evidence in the record in accordance

with the regulatory requirements.  (Tr. at 927 ("The undersigned also considered

opinion evidence in accordance with the requirements of 20 [C.F.R. §] 404.1527.")).

Because the ALJ did not need to discuss every factor, the Undersigned finds that the

ALJ's statement that he considered all opinion evidence demonstrates that he

considered the requisite factors.  *See Shaul v. Comm'r of Soc. Sec.*, No. 2:12–cv–539–

FtM–DNF, 2014 WL 116599, at *12 (M.D. Fla. Jan. 13, 2014) (finding that the ALJ

complied with considering the § 404.1527(c) factors because the ALJ "stated that all

of the medical evidence was weighed in accordance with the requirements of SSR 96-

2p, which would encompass all of the appropriate factors").  Third, to the extent

Plaintiff argues that the ALJ should have considered certain evidence differently,

(Doc. 18 at 38), it is not the role of this Court to reweigh the evidence.  *Winschel*, 631

F.3d at 1178.  The Undersigned already found that substantial evidence supported

the ALJ's decision to weigh the relevant opinions as he did, and the Court need not

evaluate other evidence to reach a different conclusion.  *See Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 147 (11th Cir. 2021) ("The issue before this court, however, is not whether the [ALJ] could have relied on other evidence in assigning weight to [the doctor's] testimony, but whether substantial evidence in the record supports the [ALJ's] findings . . . .  It does.") (citation omitted).

Finally, Plaintiff argues that the ALJ failed to rely on or cite any medical evidence to support his mental RFC determination.  (Doc. 18 at 39-40).  Again, the Undersigned is unpersuaded.  Plaintiff relies on SSR 96-8p, 1996 WL 374184, for the proposition that an ALJ is required to rely on specific evidence that supports the RFC finding.  (Doc. 18 at 40).  But all that is required is that the ALJ consider all the evidence in the record before expressing a finding on the RFC.  *See Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) ("While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [plaintiff] claimed."); *see also Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (finding that the ALJ complied with SSR 96-8p because "the ALJ fully discussed and evaluated the medical evidence, [the plaintiff's] testimony, and the effect each impairment has on his daily activities").  Here, the ALJ carefully considered and discussed the evidence and evaluated both the medical opinions and Plaintiff's testimony in formulating his RFC.  (Tr. at 929-32).  In fact, the ALJ concluded his RFC assessment by explaining exactly what led him to his decision:

> Based on the foregoing, the undersigned finds the claimant
> had the above residual functional capacity assessments,
> which are supported by the findings from the numerous
> mental status examinations by Dr. Carroll and at the VA
> clinic, the psychological evaluation by Dr. Cohen, the
> physical exam and MRI Results of the claimant's neck at
> the VA clinic, and the lay observations of the claimant at
> the hearings.

(*Id.* at 932).  Considering this, and recognizing that substantial evidence supported

the ALJ's decision to weigh the opinion evidence as he did, the Undersigned finds

that the ALJ's RFC analysis complied with SSR 96-8p.  *Freeman*, 220 F. App'x at

960.

In sum, the Undersigned finds no error in the ALJ's decision to weigh the

opinions of Drs. Carroll and Cohen as he did.  Substantial evidence supports his

decision, and the Undersigned finds that the ALJ's decision is due to be affirmed on

this issue.

### B.   Whether the ALJ Failed to Properly Evaluate Plaintiff's Testimony.

Plaintiff argues that the ALJ's evaluation of Plaintiff's subjective testimony is

not supported by substantial evidence.  (Doc. 18 at 43).  Plaintiff reiterates his

contentions from his first argument that the ALJ erred because he suggested "that

mental status findings cannot support a finding of disability for Plaintiff."  (*Id.*).

Plaintiff specifically maintains that "the fact that some treatment records described

Plaintiff as 'stable' does not contradict a finding of disability for" Plaintiff.  (*Id.* at 44

(internal citation omitted)).  Plaintiff criticizes the ALJ for noting some improvement

for Plaintiff with treatment but not acknowledging that there was no significant or

sustained improvement.  (*Id.* at 45).  Plaintiff also asserts that "the ALJ erred by disparaging the types of treatment prescribed."  (*Id.* at 46).  Plaintiff ends his arguments by stating that "the ALJ erred by concluding that [Plaintiff's] appearance and demeanor at the hearing are inconsistent with that of a mentally disabled individual."  (*Id.* at 47 (citing Tr. at 930)).

The Commissioner responds by arguing that the evaluation of a claimant's subjective complaints lies primarily with the ALJ.  (Doc. 22 at 16, 19).  The Commissioner describes the ALJ's evaluation and cites to evidence in the record to support that evaluation.  (*Id.* at 17-19).  The Commissioner rejects Plaintiff's contention that the ALJ indicated that Plaintiff "no longer had any issues whatsoever because of his treatment."  (*Id.* at 19).  Further, the Commissioner contends that the ALJ's finding that "normal objective medical evidence of record did not support his subjective complaints of disabling limitations" was supported by substantial evidence.  (*Id.* at 20).  As to the issue of the ALJ's mentions of "stable," the Commissioner maintains that Plaintiff has misunderstood the ALJ to say that Plaintiff had no mental health issues instead of commenting on the consistency of the findings.  (*Id.* at 20-21).  The Commissioner also urges the Court to find no error with his consideration of Plaintiff's conservative treatment or Plaintiff's appearance and demeanor at the hearing.  (*Id.* at 21-24).

To establish disability based on subjective testimony of other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence

confirming the severity of the alleged [symptom]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptom]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's complaints, the ALJ may reject them as not credible, and that determination will be reviewed to determine whether it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)) (internal quotations omitted).  If an ALJ discredits the subjective testimony of a plaintiff, then the ALJ must "articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

Here, the Undersigned finds that the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence.  The ALJ began his analysis by

recognizing that Plaintiff's "medically determinable impairments could reasonably be expected to have caused some of the alleged symptoms." (Tr. at 928). But the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). The ALJ cited records from Palm Partners that showed Plaintiff had a history of anxiety and depression in connection with an alcohol dependence but noted that a mental status exam in March 2012 showed that Plaintiff had "a neat appearance, was alert and lucid, fully oriented, and had normal motor activity and speech." (*Id.*). The exam also revealed that Plaintiff had an appropriate affect, had normal concentration, and had no impairment of thought content, including no suicidal ideations. (*Id.* (citing *id.* at 487)). In addition, the ALJ noted that Dr. Carroll's mental status exam findings included that Plaintiff's judgment was logical, his insight appropriate, and his thought process organized. (*Id.* (citing *id.* at 822)). Later mental status exams showed that Plaintiff continued to have a constricted affect, but his appearance improved, his attitude was cooperative, and his speech was clear and coherent. (*Id.* (citing *id.* at 813-19, 824-34)). Also, while Plaintiff still showed impaired concentration and memory, his judgment and insight were found to be fair. (*Id.*). These findings followed Plaintiff's treatment, which "consisted of a regimen of psychotropic medications and referrals to counseling." (*Id.*).

The ALJ also considered the psychological evaluation by Dr. Cohen. (*Id.*). The ALJ noted that Dr. Cohen found Plaintiff to be cooperative and friendly, to have

good eye contact and good hygiene and grooming.  (*Id.*).  The ALJ further discussed that "[a]lthough [Plaintiff's] mood was depressed and his affect was congruent, marked by tearfulness, his thought process was goal directed and his speech was within normal range."  (*Id.*).  According to Dr. Cohen, Plaintiff "was fully alert and oriented, and his attention span and concentration appeared to be average."  (*Id.*).  The ALJ noted that Plaintiff's memory was found to be below average but not impaired.  (*Id.*).

Similarly, the ALJ found additional progress notes from Dr. Carroll to show consistent findings, including that Plaintiff showed a depressed and anxious mood with a constricted affect, but that he also had an appropriate general appearance, fair eye contact, cooperative attitude, and clear and coherent speech.  (*Id.* at 929).  The ALJ also noted Dr. Carroll's findings that Plaintiff had no perceptual disorders or suicidal or homicidal ideations but had a logical and organized thought process with normal content and fair judgment and insight.  (*Id.* (citing *id.*at 1184, 1186, 1188)).

The ALJ additionally considered the records from the Veterans Affairs clinic.  (*Id.*).  In a September 2015 mental status exam, Plaintiff was found to be fully oriented and calm and cooperative, with grossly intact cognition, normal speech, and intact judgment and insight without any suicidal or homicidal ideations.  (*Id.* (citing *id.* at 1219-20)).  Progress notes from five months later showed similar findings with Plaintiff reporting a benefit from attending mental health therapy.  (*Id.* (citing *id.* at 1241, 1246)).  The ALJ continued by noting that Plaintiff's additional records from the VA clinic showed that his "mental health was stable with the numerous therapy

modalities." (*Id.*). Citing many records, the ALJ described that various providers at the VA clinic found Plaintiff to have "essentially normal objective findings, including: full alertness and orientation, appropriate grooming and good eye contact, no psychomotor retardation and normal speech, calm mood with full and congruent affect, no signs of suicidal/homicidal ideations or evidence of hallucinations, and intact cognition with fair-to-good insight and judgment." (*Id.* (citations omitted)).

Beyond this objective medical evidence, the ALJ also noted Plaintiff's appearance and demeanor as being inconsistent with Plaintiff's testimony. (*Id.* at 930). The ALJ stated that Plaintiff "looked his stated age, was appropriately dressed, and he had good personal hygiene and grooming." (*Id.*). The ALJ observed that Plaintiff remained seated the entire hearing "without significant difficulty." (*Id.*). When Plaintiff left the hearing, the ALJ saw that Plaintiff "stood up, opened the heavy door and walked out of the courtroom with a normal gait and no difficulty observed." (*Id.*). As to his demeanor, the ALJ found Plaintiff to be "cooperative and responsive to questions." (*Id.*). The ALJ noted that Plaintiff "was alert and aware of what went on at the hearing, and he paid good attention, was well focused, understood the questions and gave relevant and very detailed answers." (*Id.*). Finally, the ALJ asserted that Plaintiff's "manner of relating, social skills and overall presentation seemed adequate; his speech was clear, intelligible, goal directed, logical, coherent, and he kept his trend of thought." (*Id.*).

The subjective symptom evaluation is the province of the ALJ, and this Court should decline to disturb it given the substantial supporting evidence in the record cited by the ALJ. *See Foote*, 67 F.3d at 1562. Moreover, when the ALJ conducts the subjective symptom evaluation "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted). As evidenced by the ALJ's discussion of the relevant medical evidence, and upon reviewing the record, the Undersigned finds that the ALJ considered Plaintiff's medical history and treatment history and appropriately found them inconsistent with Plaintiff's subjective complaints. (*See* Tr. at 928-30 (citations omitted)).

Plaintiff's specific arguments to the contrary are unavailing. Plaintiff challenges the ALJ's consideration of Plaintiff's improvement with medication. (Doc. 18 at 46-47). But an ALJ may consider treatment, including conservative treatment, and any improvement with said treatment. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding substantial evidence to support ALJ's decision to discredit plaintiff's testimony based, in part, on the plaintiff's conservative course of treatment); *Dyer v. Barnhart*, 395 F.3d 1206, 1212-13 (11th Cir. 2005) (finding ALJ adequately discounted subjective complaints based, in part, on improvement through medication for anxiety). Plaintiff also maintains that the ALJ improperly focused on Plaintiff being "stable." (Doc. 18 at 44-45). The Undersigned finds the natural

reading of this term in the ALJ's decision to be a reference to consistent, objective findings of Plaintiff's mental health rather than a reference that Plaintiff was "doing well." (*Id.* at 44 (citations omitted)).  This understanding is bolstered by the fact that that ALJ immediately began discussing and summarizing the consistent findings that led him to his conclusion. (Tr. at 929).  But even if the ALJ erred by using the term "stable," because the ALJ's decision to find Plaintiff's testimony inconsistent with the medical evidence is otherwise supported by substantial evidence, the ALJ's error would be harmless. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 775-76 (11th Cir. 2016) ("The ALJ's factual errors are harmless, as substantial evidence supports the ALJ's determination that [the plaintiff] was not entirely credible.").

Finally, Plaintiff contends that the ALJ improperly engaged in "sit and squirm jurisprudence" by commenting on Plaintiff's appearance and demeanor at the hearing.  (Doc. 18 at 47-48 (citation omitted)).  So long as the ALJ's decision to discredit testimony is not based solely on the appearance and demeanor of the plaintiff at the hearing, the ALJ "is not prohibited 'from considering the claimant's appearance and demeanor during the hearing.'" *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (quoting *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)); *see also Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012). The ALJ's decision in this case was not based solely on the ALJ's observations at the hearing.  (Tr. at 929-30).  Because the ALJ may consider Plaintiff's demeanor and appearance at the hearing and did not base his decision solely on those factors, the Undersigned finds no error. *Macia*, 829 F.2d at 1011; *Kalishek*, 470 F. App'x at 871.

In sum, the Court finds that the ALJ considered the entire record of evidence, appropriately found it inconsistent with Plaintiff's subjective complaints, and provided sufficient, explicit reasoning such that the Court could conduct a meaningful review of the ALJ's determination. (*See* Tr. at 927-32); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole.") (quotations omitted and citing *Foote*, 67 F.3d at 1558). Accordingly, the Undersigned finds that the ALJ's subjective symptom determination is supported by substantial evidence, and the ALJ's decision is due to be affirmed as to this issue.

## C. Whether the ALJ Relied on a Flawed Hypothetical to the VE.

Plaintiff's final argument in opposition to the Commissioner's decision is that the ALJ failed "to accurately account for a finding that the claimant has moderate restrictions in concentration, persistence, or pace in the accepted hypothetical to the vocational expert." (Doc. 18 at 48). Plaintiff notes that the ALJ found him to have moderate limitations with understanding, remembering or applying information, interacting with others, and concentrating, persisting, or maintaining pace. (*Id.* at 49 (citing Tr. at 925-26)). But the ALJ's hypothetical to the VE from the first hearing only limited Plaintiff to limited simple work. (*Id.*). The hypothetical to the VE during the "second hearing limited Plaintiff mentally to understand and carry out simple, routine, repetitive unskilled tasks with the ability to make basic decisions and

adjust to simple changes in the work setting; and only occasional interactions with others, including the general public, coworkers and supervisors." (*Id.* (citing Tr. at 978)). Plaintiff argues that those restrictions have nothing to do with Plaintiff's "ability to concentrate for hours while in a work setting, maintain a particular work pace over the course of a workday or workweek, nor does the hypothetical describe limitations in Plaintiff's ability to persist at tasks." (*Id.* at 50). Finally, Plaintiff contends that this error was not harmless because the "VEs testified that an individual who was off task as little as 9 percent of the day or absent from work 2 to 3 times a month could not work." (*Id.* at 50 (citing Tr. at 273, 276, 979, 981)).

The Commissioner rejects Plaintiff's arguments, citing case law for the proposition that hypotheticals that limit an individual to simple, routine, and repetitive tasks adequately accounts for moderate limitations in concentration, persistence, or pace. (Doc. 22 at 25-27 (citations omitted)). The Commissioner also argues that "the ALJ did not find an off-task or absenteeism limitation supported by the record and [properly] did not include such a limitation in the RFC finding." (*Id.* at 27 (citing Tr. at 927)). In sum, the Commissioner contends that the ALJ did not err "by choosing not to rely on alternative VE testimony that included unsupported limitations." (*Id.* at 28 (citation omitted)).

The Undersigned finds no reversible error with the ALJ's hypotheticals to the VEs. "At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citations omitted). "An

ALJ may make this determination either by applying the Medical Vocational

Guidelines or by obtaining the testimony of a vocational expert." *Id.* "In order for a

vocational expert's testimony to constitute substantial evidence, the ALJ must pose a

hypothetical question which comprises all of the claimant's impairments." *Wilson*,

284 F.3d at 1227.

The first hypothetical at issue was for the VE to "assume an individual has the

residual functional capacity to perform work at all exertional levels, but is limited to

work that is simple as defined in the DOT as SVP levels 1 and 2, routine and

repetitive tasks." (Tr. at 272). At the second hearing, the ALJ posed the following

hypothetical:

> If a hypothetical, advanced age, and closely approaching
> retirement age individual, with more than a high school
> education, and limited to medium level of exertion, with
> limitations, that is never climbing long, vertical ladders,
> scaffolds, ropes, or at open, unprotected heights; avoidance
> of extreme heat temperature; no operation of dangerous
> machinery; no work in places where alcoholic beverages are
> available; *limited to understanding and carrying out simple,*
> *routine, repetitive, unskilled tasks*, with the ability to make only
> basic decisions and adjust to simple changes in a work
> setting, with interaction with others, including the general
> public, co-workers, and supervisors limited to occasional.

(*Id.* at 978 (emphasis added)).

Plaintiff relies primarily on *Winschel v. Commissioner of Social Security* for his

argument that the ALJ erred with the above hypotheticals. (Doc. 18 at 48-49). In

*Winschel*, the Eleventh Circuit held that a VE's testimony was not substantial

evidence because the ALJ asked a hypothetical question that "failed to include or

26

otherwise implicitly account for all of [the plaintiff's] impairments." 631 F.3d at 1181. The Eleventh Circuit noted that the problem with the hypothetical was that the plaintiff's "mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace[, b]ut the ALJ did not indicate that medical evidence suggested [the plaintiff's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical." *Id.*

Unlike the hypothetical in *Winschel*, the ALJ's hypotheticals in this case implicitly accounted for moderate limitations to Plaintiff's concentration, persistence, and pace. *See Ortiz v. Comm'r of Soc. Sec.*, No. 6:18-cv-2060-Orl-28EJK, 2020 WL 378490, at *7 (M.D. Fla. Jan. 8, 2020), *report and recommendation adopted*, 2020 WL 377177 (M.D. Fla. Jan. 23, 2020) ("The instant case is distinguishable from *Winschel* because the hypothetical posed to the Vocational Expert restricted Plaintiff to simple and routine tasks, which implicitly accounted for Plaintiff's moderate mental limitations."). Medical evidence demonstrated that Plaintiff maintained the ability to perform simple, routine, and repetitive tasks or unskilled work despite his moderate limitations in concentration, persistence, and pace. (*See, e.g.*, Tr. at 837, 842). For that reason, the ALJ did not err in his hypotheticals. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011) ("[A]n ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies."); *see also Duval v. Comm'r of Soc. Sec.*, 628 F.

App'x 703, 713 (11th Cir. 2015) ("[T]he ALJ accounted for Mr. Duval's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform."); *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that [the plaintiff] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace"); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 541 (11th Cir. 2014) ("The ALJ adequately accounted for all of [the plaintiff's] impairments in the hypothetical posed to the VE because he implicitly accounted for [the plaintiff's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work.").

As for Plaintiff's suggestion that the ALJ should have considered absenteeism limitations in the hypotheticals or RFC finding, the Undersigned is unpersuaded. Plaintiff points to no evidence that would support such a limitation. (Doc. 18 at 50-51). For reasons the Undersigned discussed earlier, substantial evidence supports the ALJ's findings with respect to mental limitations in the RFC finding. This Court should not reweigh the evidence to find additional limitations that the ALJ found to be unsupported and whose decision is based on substantial evidence. *See Ingram v. Comm'r of Soc. Soc.*, 496 F.3d 1253, 1270 (11th Cir. 2007). "[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

For these reasons, the Undersigned does not find that the ALJ erred with respect to the hypotheticals asked of the VEs.

## VI.     Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds no reversible error.  Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.     The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.     The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Tampa, Florida on June 14, 2023.

_____
Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any

unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties